Davies, J.
This is an action by the receiver of the North American Trust and Banking Company to foreclose a mortgage executed to that' Company, dated December 20, 1838. Ferris Pell, the husband of the defendant, Mary Anna Pell, was indebted to the Company on his bond for the payment of the sum of $15,000. And to secure the payment of this bond the mortgage was executed by Mr. and Mrs. Pell, and by Mr. Selden, her trustee. ’ In. November, 1827, the defendant, Mrs. Pell (then the widow of Mr. Sturgess), being the owner of certain real and personal estate, executed, in' anticipation of her marriage with the deceased, Ferris Pell, an ante-nuptial settlement, to which her intended husband and De Witt Clinton, *475 now deceased, were parties. By it, after reciting her intended marriage, she conveyed all her real estate to Mr. Clinton upon trust, for her sole benefit, “ and to permit her to take the rents thereof to her own use, free from the debts and control of her husband and, upon her decease, in trust for her heirs and assigns forever.” A triple power was reserved thereby to Mrs. Pell, as if she were a feme sole :
First. To sell and dispose of the premises as she should think proper.
Second. To devise the same among her children, .with her husband’s approval, in writing under his hand and seal, or to devise the same to him.
Third. To agree to a partition of any lands, which she might own jointly with others. And a power was therein reserved to Mr. and Mrs. Pell, of revoking or altering the uses therein limited, and to declare, limit and appoint such new or other uses, as they should jointly think fit. De Witt Clinton died in February, 1828, and on the 14th June, 1830, , Dudley Selden was appointed by the Court of Chancery, trustee under said indenture in the place of Mr. Clinton.
On the 6th of April, 1830, Ferris Pell, who was seised in fee of four of the six lots covered by the mortgage sought to be foreclosed by the present action, made, executed and delivered to Abraham Bancker, his bond for the payment of the sum of two thousand dollars. And on the same day, and at the time of the execution of the said bond, the said Pell and his wife made, executed and delivered to said Bancker a mortgage upon the said four lots, as' security for the payment of the money, mentioned in the said bond. On the 22d day of October, 1830, Alfred S. Pell and his wife, being seised in fee of said four lots of land, under a conveyance from the said Ferris Pell and his wife, subject to said mortgage to said Bancker, and of two other lots of land adjoining the same, did, by a certain indenture bearing date on that day, convey the same six lots of land above mentioned to the said Dudley Selden, subject as to four of said lots to said Bancker’s mortgage.
*476 In May, 1851, Selden and wife executed a deed to Mrs. Pell, reciting the conveyance of the said six'lots to Mr. Selden, declaring that the same were conveyed to him as the trustee of Mrs. Pell, and thereby covenanting and agreeing to hold the same upon the trusts, terms and conditions, and for the purposes, as declared in the trust deed or marriage settlement, executed in November, 1827, between Mr. and Mrs'. Pell and De Witt Clinton.
On the 11th of March, 1854, another indenture was made and executed by and between Mr. Pell, of the first part, Mrs. Pell, of the second part, and Mr. Selden, of the third part, setting forth, among other things, the seisin of Mr. Selden of the six lots of land; that Mrs. Pell was desirous to have the trusts relating thereto revoked, and the thereinafter trusts limited and declared of and concerning the same; that the said lots were purchased with moneys which were of the separate estate of Mrs. Pell; and that it had been agreed between the parties that the then existing trusts in said lots should be revoked, and that the same should thereafter be held by the said Selden' upon the trusts thereinafter declared. And the parties thereto did therein and thereby revoke and annul the trusts, terms and conditions, upon which the said premises had theretofore been held, and did declare that the same should thereafter be held upon the trusts, terms and conditions therein expressed and declared, among other things, to receive the rents and profits thereof during the life of Mrs. Pell, and dispose of the same as therein directed.* And it was therein declared and agreed by and between all the parties thereto, .that it should and might be lawful for Mrs. Pell, notwithstanding her coverture, with the consent of her husband during his life, and alone after his death, at any time or times, by any deed or deeds, to mortgage, or to charge, or to make chargeable, the said lots of land, or any part thereof, with and for the payment of any sum or sums of money, to be paid *477 and payable at any time or times, to any person or persons, with interest for the same, not exceeding the rate allowed by law.
By a stipulation made between all the parties to this suit, it was agreed that the defendants and appellants would, on the argument of this appeal to this court, admit that the mortgage in question was and is valid, if 'Mary Anna Pell and her trustee, with or without her husband, had power to give the said mortgage under any or all the instruments in evidence, as security for the bond mentioned in the mortgage, being for the personal debt of said Ferris Pell; and all other questions were by said stipulation expressly abandoned.
The only question, therefore, remaining for consideration, is, whether Mrs. Pell had authority, under the several instruments set forth, to mortgage these six lots of land for the payment of the bond of her husband to. the banking company. It is to be observed that these lots were not embraced in the original marriage settlement, but at the time of the execution of the deed between Mrs. Pell and her husband and Selden, in 1834, were held by Selden upon the same trust and subject to the same right and power of revocation and disposition, and to create new and other trusts, which she had declared and reserved in and by the marriage settlement of 1827.
By that settlement, as we have seen, Mrs. Pell, in effect, reserved the right and power to sell and dispose of her real estate, included in the settlement, as she should think proper, and as if she were a feme sole; and she also reserved the power to revoke the trusts therein contained, and to declare, new trusts by deed under the hands and seals of herself and her husband.
The deed of 1834, to which Mrs. Pell, her husband and Mr. Selden were parties, was a revocation of the .uses and trusts declared in the marriage settlement of 1827, in reference to the premises covered by the mortgage, set forth in the pleadings in this action, and contained a declaration ■ of the new uses and trusts upon which they were thereafter to be held, and among them was the power to mortgage the same *478 with the consent of her husband. This consent is manifested by his joining with his wife in the execution of the mortgage, and the legal title to the premises passed by its execution by the trustee.
The power to execute the mortgage was thus reserved to Mrs. Pell, and she has executed the mortgage in accordance with the power thus reserved, and the only question remaining is, could she legally reserve and execute this power.
It would seem that there could not be much doubt on this subject. The language of the Revised Statutes is plain and unambiguous. Section 110 (1 R. S., 735), declares that a married woman may execute a power during her marriage, by grant or devise, as may be authorized by the power, without the concurrence of her husband, unless, by the terms of the power, its execution by her during marriage is expressly or impliedly prohibited. This court held, in Wright v. Tallmadge (15 N. Y., 307), that this section completely takes away the disability of coverture in respect to the execution of powers, and that a power, general or special, beneficial or in trust, may be reserved to a married woman by a marriage settlement, by which the entire legal estate is vested in trustees.
Mow the power to revoke the trusts of the marriage settlement, and to declare the new or different trusts, was duly and legally exercised, and with the concurrence of the husband as provided for in the marriage settlement. The new trusts were declared with the like concurrence, and the power to mortgage was executed also with his concurrence. There was no restriction in the power to mortgage as to the class or character of debts, to secure which she might execute a mortgage. The language used in creating the power is of the most general .character. It is to mortgage, or to charge, or make chargeable, the said lots, with and for the payment of any sum or sums of money, to be paid and payable at any time or times, to any person or persons. There is nothing in the power, therefore, to prohibit a mortgage for the debts of her husband, or any other person, or for a debt of her own contracting. And we do not see any reason why, in the exe *479 cution of the power, she might not as well have given the mortgage for one purpose as the other. The only questions are, whether the power to mortgage could lawfully be reserved to a married woman, and whether the mortgage executed was within the terms of the power. Both of these questions must be answered in the affirmative, and it follows that the mortgage was in all respects legal and valid, and that the judgment of the Supreme Court must be affirmed, with costs.
Judgment affirmed.

 “ And apply them to her separate use free from the control, debts or engagements, of her then present, or any future, husband.”